# EXHIBIT A

## PRACTICE PURCHASE AGREEMENT

THIS PRACTICE PURCHASE AGREEMENT ("**Agreement**") is made and entered into on the dates of their respective signatures below by and between SHAWN PARKER (the "**Seller**"), whose business address is 931 N. Plum Grove Road Schaumburg, Illinois 60173 and JUSTIN A. PARKER (the "**Buyer**"), whose business address is 931 N. Plum Grove Road Schaumburg, Illinois 60173 ("**Business Premises**"), to be effective on the _8th_ day of June, 2020 (the "**Agreement Date**"). Seller and Buyer may be hereinafter referred to collectively, as the "**Parties**", or individually as a "**Party**".

### R E C I T A L S

A.    Seller is a financial advisor affiliated with Ameriprise Financial Services, Inc. ("**Ameriprise**"), who has developed a client base to which she provides fee-based financial advice, product solutions and other services operating at an office located at the Business Premises. As an Ameriprise advisor, Seller operates a financial services business (the "**Business**").

B.    Buyer is a financial advisor affiliated with Ameriprise, operating at an office located at the Business Premise; and

C.    The relationships between Seller and the current clients of the Business (the "**Clients**") and the expected continued patronage of such Clients, due to Seller's own name and reputation and ability to influence such relationships with such Clients, constitute valuable personal goodwill of Seller (collectively, the "**Goodwill**"). Seller, individually, owns the Goodwill.

D.    The Business has been owned, operated and staffed by Seller and one adminstrative assistant. Seller, individually, owns the client lists and associate records, including but not limited to client files, telephone numbers, computer data, and records used by Seller to service Clients (collectively, the "**Assets**"). The Seller's client list is attached as **Exhibit A** hereto and made a part hereof.

E.    The Seller is not subject to any covenant not to compete that pre-dates this Agreement.

F.    Subject to the terms and conditions set forth below, Buyer desires to acquire the Goodwill and Assets from Seller and to enter into certain consulting covenants, restrictive covenants, and other covenants with Seller relating to such Goodwill, Assets, and the Business.

G.    In the absence of Seller's sale of the Assets and Goodwill and entering into the consulting covenants, restrictive covenants, and other covenants with Buyer hereunder, the Business would have minimal value and Buyer would not be interested in acquiring it.

H.    Contemporaneously with the Parties' execution and delivery of this Agreement, Buyer is executing and delivering the Promissory Note of even date herewith in the form attached as **Exhibit B** (the "**Promissory Note**"), a Non-Compete Agreement of even date

C\1381055.3

herewith in the form attached as **Exhibit C** (the "**Non-Compete Agreement**"), and a Consulting Agreement of even date herewith in the form attached as **Exhibit D** (the "**Consulting Agreement**").

In consideration of the mutual covenants, agreements, representations and warranties set forth herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1. **Sale of Business.**

(a) **Purchased Assets.** On the Closing Date, which date shall be a day after the end of a payment period of Ameriprise so that all income earned prior to Closing will be the Seller's income, Buyer agrees to purchase from Seller, and Seller agrees to sell, assign, convey and transfer to Buyer, on the terms set forth in this Agreement, all of Seller's right, title and interest in and to the Goodwill and Assets of Seller related to the Business, including but not limited to the following:

(i) all rights to the Clients and all revenue related thereto, including all contracts, records and information related to the Clients and any residual commissions or residual payments related to the Clients;

(ii) all of the professional and other Goodwill and going concern value of the Business and the Clients;

(iii) Furniture, Fixtures and Computers located at the Business Premises. $4,701.

(iv) Lease agreement for the building. The security deposit shall be assigned to the Buyer and in the Buyer's disrection either paid directly to the Seller at Closing or added to the Promissory Note principal. No later than 1/1/2021

(b) **Excluded Assets.** _____. The proceeds from this Excluded Sale shall be the only Asset of Seller's Business excluded from this Agreement.

(c) **Excluded Liabilities.** All obligations and liabilities of Seller of whatever nature whatsoever shall remain the obligations and liabilities solely of Seller and none of such obligations or liabilities shall be assumed by Buyer. Without limiting the foregoing, the Buyer and Seller expressly agree that Buyer will not assume the following liabilities of Seller ("**Excluded Liabilities**"): pending litigation; past, current or future third party claims arising from or relating to Seller's acts or omissions; tax obligations of Seller; civil or criminal claims arising from Seller's acts or omissions; undisclosed or unknown liabilities; tort liabilities; or expenses relating to the Business that are incurred prior to the Closing Date. Following the Closing Date, Buyer shall provide services to the Clients at or after the Closing and Seller shall provide such services as directed by the Consulting Agreement.

(d) **Conditions Precedent.** Each of the following events shall be an independent condition precedent to Closing:

2

2569006

(i)      Written consent of Ameriprise, as necessary.

(ii)      Seller amending and updating **Exhibit A** as necessary as of the Closing Date to reflect to Buyer's satisfaction the complete list of Clients transferred to Buyer as of Closing, along with the *Assets Under Management* for each respective Client ("**Client AUM**"). At Closing, Seller shall provide on **Exhibit A** the Client AUM as reported in Ameriprise's most recent twenty six (26) service period recurring revenue report to the Closing Date.

2.    **Purchase Price.**

(a)    Total Purchase Price. The Parties agree to a total purchase price of $16,000,000.00and 00/100 Dollars  ($16,000,000.00) (the "**Purchase Price**").

(b)    Payment. At Closing, the Buyer shall pay the Purchase Price to Seller in the form of the Promissory Note ("**Holdback**").

(c)    Allocation. The Buyer and Seller agree to allocate the Purchase Price for all purposes (including financial accounting and tax return purposes) as follows and each agree to file IRS Form 8594 (a copy to be furnished to each party at Closing) consistent with the below allocation:

| | |
|---|---|
| Goodwill: | $16,000,000.00 |
| Seller's Consulting Covenants: | $0.00 |
| Seller's Assets: | $    0.00 |
| Seller's Restrictive Covenants (Non-Compete): | $0.00 |
| | TOTAL:$16,000,000.00 |

(d)    Attrition. Attrition shall be measured by two groups of clients. Group 1 shall be the clients listed on Exihbit A-1. Group 1 shall consist of 120 identified clients. Group 2 will be the remaining clients of Seller listed on Exhibit A-2. Attrition shall be measured by the value of Seller's Client AUM as measured on the Closing Date versus the value of Seller's Client AUM on the nearest Ameriprise twenty six (26) service period recurring revenue report on the Twenty Four (24) month anniversary date of the Closing Date ("**Adjustment Date**"). Within three (3) business days of the Adjustment Date, the Buyer and Seller shall request that Ameriprise generate a list of the client's of Buyer's business, current as of the Adjustment Date (the "Adjustment Report"). Upon receipt of the Ameriprise Adjustment Report, Buyer and Seller shall each compare the **Exhibit A** client list against the Adjustment Report and identify departed Clients as of the Adjustment Date ("**Departed Clients**"). Any Client who has removed greater than fifty percent (50%) of their assets under management (life insurance, annuities, and non-publically traded investments are not considered assets under management for these purposes) in the interim period from the Closing Date until the the Adjustment shall be considered a Departed Client. However, any reduction of Client invested assets due to (i) Buyer transferring Client to an Ameriprise Home Office account; and (ii) assets transferred directly from a Client to a new client of Buyer's business, shall be added back at the Adjustment Date.

3

2569006

For Group 1 clients there will be a clawback of 100% for each percentage reduction for each percentage of Client AUM. Seller and Buyer agree that any new clients, clients not affiliated with Seller's current practice that Seller brings into the Buyer's practice the new AUM will be used to offset any attrition from Group 1. For example, if there is attrition of 10% of the AUM from Group 1, the purchase price will be reduced by 10%. Buyer will notify Seller in writing within seven (7) days of a Group 1 client leaving the Buyer's practice.

For Group 2 clients there will be If the Seller's Client AUM at the Adjustment Date is ninety percent (90%) or less than the Seller's Client AUM at the Closing Date (excluding any market gains or losses from the Closing Date until the Adjustment Date), then the Purchase Price shall be reduced proportionately for the percentage of assets lost exceeding the ten (10%) reduction. For example, if Seller's Client AUM at the Adjustment Date is eighty four percent (84%) of the value of the Seller's Client AUM at the Closing Date, then the Purchase Price shall be reduced by six percent (6%) and the Promissory Note shall be reduced.

In the event of a Purchase Price adjustment, the Seller agrees to amend the Promissory Note to reflect the amended price. The attrition adjustment for both Group 1 and Group 2 will be from the initial Purchase Price. The Purchase Price reduction, if any, shall be allocated to the Goodwill portion of the Purchase Price.

Buyer will provide Seller with a written list of clients that have left the practice and the allocated Client AUM on a monthly basis. Seller will have thirty days after receipt of the monthly list by e-mail to determine if the clients have left the practice because of adverse policy decisions or gross negligence by the Buyer, servicing advisor or the Buyer's staff. If the reason for the client leaving the practice is determined to be adverse policy decisions or gross negligence than the client will not be computed as a client leaving the practice for the attrition computation. The Seller, is prohibited from contacting the client except as allowed by Ameriprise. If there is a dispute over the reason the client has left the practice between Buyer and Seller than the parties shall resolve the matter via FINRA and its arbitration procedures. If Seller does not contest the client leaving the Buyer's practice within thirty days of the e-mail the right to contest is deemed waived for those clients.

3.     **Closing**.

(a)     **Time and Place.** The closing of the transactions contemplated in this Agreement ("Closing") shall occur on June _8th_, 2020 ("**Closing Date**"), or such other date as Buyer and Seller may mutually agree upon, subject to satisfaction of the conditions precedent contained in Sections 1(d), 3(c) and 3(d) of this Agreement. The Closing shall be deemed effective as of 12:01 a.m. on the Closing Date. The Closing shall be held at the Business Premises or as otherwise mutually agreed by the Parties.

(b)     **Closing Deliveries.**

(i)     At the Closing, Seller shall execute (as applicable) and deliver to Buyer all of the following:

(1)     The Practice Purchase Agreement, duly executed by Seller;
(2)     The Non-Compete Agreement, duly executed by Seller;

4

2569006

(3) The Consulting Agreement, duly executed by Seller;

(4) State of Illinois Department of Revenue Bulk Sales Release Notice;

(5) An Asset Bill of Sale and a Goodwill Bill of Sale made by Seller to Buyer, duly executed by Seller, with appropriate warranties of ownership, in form acceptable to the Parties, effectuating the transfer of the Assets and Goodwill to Buyer and vesting good and marketable title to the Assets and Goodwill in Buyer, free and clear of liens and encumbrances;

(6) Possession of the Assets;

(7) Evidence, satisfactory to Buyer, that Seller has, on or before the Closing Date, caused Ameriprise to make a block transfer of Client accounts to Buyer so that Buyer is the representative of record for the Client accounts;

(8) A closing statement in the form acceptable to the Parties duly executed by the Parties;

(9) A Certificate that all representations and warranties of Seller are true, correct, and complete as of the Closing Date; and

(10) Such other documents as are required under this Agreement or Buyer's attorney may reasonably request at or before the Closing in order to consummate or effectuate the transactions contemplated under this Agreement.

(ii) At Closing, Buyer shall execute (as applicable) and deliver to Seller all of the following:

(1) The Closing Payment;

(2) The Promissory Note, duly executed by Buyer;

(3) The Practice Purchase Agreement, duly executed by Buyer;

(4) The Non-Compete Agreement, duly executed by Buyer;

(5) The Consulting Agreement, duly executed by Buyer;

(6) A closing statement in the form acceptable to the Parties duly executed by the Parties;

(7) A Certificate that all representations and warranties of Buyer are true, correct, and complete as of the Closing Date; and

(8) all other documents Seller reasonably determines necessary to consummate the transactions contemplated hereby and transfer the Assets as set forth herein.

4.  **Seller's Representations and Warranties.** Seller hereby represents, warrants, and covenants to Buyer, as of this Agreement Date and upon the Closing Date, that:

(a) Seller is an individual resident of the State of Florida.

(b) Seller has all requisite legal power and authority to own, transfer, and assign the Assets and Goodwill pursuant to this Agreement, and has full power and authority to carry on her Business in the manner it is currently being conducted. The execution, delivery, and performance of the Agreement has been approved by Seller and constitutes a valid and binding agreement of Seller in accordance with its terms.

5

2569006

(c)     Seller represents and warrants that the Assets being sold and transferred pursuant to this Agreement relate to an existing Ameriprise franchise that belongs to an existing franchisee. Ameriprise is not selling the Assets and will not receive proceeds from the sale.

(d)     Seller is not encumbered or restrained in any way by a broker-dealer, insurance carrier, wholesaler or agency, investment advisor, creditor, contract, or any other entity, person or legal obligation from entering into the Agreement or transferring the Goodwill or Assets. Further, Seller is not in, and has not had any event occur which could give rise to, default under any outstanding contract, mortgage, indenture, debt agreement, contract, lease, or other agreement that would affect the Business, Goodwill, or the Assets, and the execution, delivery, and performance of the Agreement by Seller does not conflict with and will not result in default or violation of any existing agreement or obligation of Seller.

(e)     All written financial information and all related supporting documentation provided to Buyer by Seller relating to the Business, and to Seller's knowledge all written financial information and related supporting documentation provided to Buyer by Ameriprise relating to the Business, is correct and complete and fairly presents the Seller's expenses, liabilities, revenues and receivables as of the dates covered in such financial information. Since the close of Seller's last fiscal year and up to the date of Closing, there has been no material adverse change in the financial condition of Seller's Business.

(f)     Seller holds good and marketable title to the Goodwill and Assets, free and clear of liens, pledges, charges, or encumbrances. Pursuant to the Agreement, Seller will transfer good and marketable title to the Goodwill and Assets at the Closing, free and clear of liens, pledges, charges and encumbrances. **Exhibit A** attached to the Agreement contains a true and complete list of all of the Client accounts of the Business as of the Closing Date and includes an accurate description of the aggregate dollar value of the assets held each of the active Client accounts as of the Closing Date.

(g)     Seller has paid all taxes relating to the Business when due, and has timely filed all tax returns relating to the Business required to be filed. There are no unpaid tax or unemployment contribution obligations or liabilities of Seller except for taxes or unemployment contribution obligations not yet due that have arisen in the current year. Seller has withheld or collected, and Seller has paid the same to the appropriate collecting authorities, the appropriate amounts from each payment made to its employees. Further, there is no action, suit, investigation, audit, claim or assessment pending, proposed, threatened or underway with respect to taxes or unemployment contributions of the Business, payroll, or other Assets of Seller, and to the best of Seller's knowledge, no basis exists therefor.

(h)     Seller has not employed any broker or finder in connection with this transaction or taken action that would give rise to a valid claim against any Party for a brokerage commission, finder's fee, or other like payment in connection with this Agreement.

(i)     There are no material leases, employment contracts, contracts for services or maintenance, or other contracts existing or related to or connected with the Business not cancelable upon thirty (30) days' prior written notice to the other Party or Parties thereto,

6

2569006

excluding Seller's lease for its leased office premises. Seller is not assigning such lease to Buyer, and Buyer is not assuming any obligations or liabilities under the lease.

(j)     Seller does not have any pending or past disciplinary history with any regulatory authority except as disclosed on Schedule 4(j). Seller holds, and has held at all relevant times prior to the Closing, all licenses, permits, and other authorizations required under applicable law for the legal sale and provision of all products and services provided at any time by Seller to Clients of the Business. The Business has been conducted at all times in accordance with applicable law.

(k)     Seller has not been notified verbally or in writing (including without limitation electronic communication) within the six (6) months immediately prior to the Closing Date that any of the Clients intend to end their business relationship with the Business or move any of their assets, accounts or trading activity to any person or entity other than Seller. Except to the extent authorized by Buyer in writing, Seller will not at any time on or after the date of this Agreement suggest to or encourage any of the Clients of the Business to move, or assist any of the Clients in moving, any assets or trading activity out of the active Client accounts.  Seller has not and shall not, either prior to or after Closing, make statements or representations, or otherwise communicate, directly or indirectly, in writing, orally, or otherwise, or take any action which may, directly or indirectly, disparage Buyer or any of his subsidiaries, employees, contractors, advisors, businesses or reputations.

(l)     There is not now and within the past ten (10) years there has been no criminal or civil claim, litigation, proceeding, or investigation pending or, to Seller's knowledge, threatened against Seller or any of the Assets. No suit, action, or other proceeding has been threatened or instituted against Seller to restrain, enjoin, or otherwise prevent the consummation of this Agreement.

(m)     None of the representations or warranties of Seller in this Agreement contain any untrue statement of material fact or omit or misstate a material fact necessary in order to make statements in this Agreement not misleading. Seller knows of no fact that has resulted, or that may or will result, in a material adverse change in the Business, Goodwill, or Assets that has not been disclosed in this Agreement.

(n)     SELLER HAS HAD THE OPPORTUNITY TO CONSULT WITH INDEPENDENT LEGAL AND/OR TAX COUNSEL OF HER OWN CHOOSING PRIOR TO ENTERING INTO THIS AGREEMENT. SELLER ACKNOWLEDGES THAT SHE HAS NOT RECEIVED OR RELIED ON ANY ADVICE FROM BUYER'S LEGAL COUNSEL.

(o)     Seller has paid in full or will pay in full when due all employee compensation, wages, bonuses, commissions, and accrued vacation pay earned up to and including the Closing Date, including overtime pay.

(p)     None of the Clients have prepaid any portion of any amount owed to Seller prior to the due date for such amount.  Other than the Excluded Sale, Seller has not taken any up-front compensation on annuity contracts sold since providing her Practice Performance Statement of May 31, 2020, the due diligence completion date.

(q)     The execution, delivery, and performance by Seller of her obligations under this Agreement will not:

(i)     Violate any provisions of law, any order of any court or other agency of government, or any indenture, agreement, or other instrument to which Seller is a party, or by which he is bound; or

(ii)     Be in conflict with, result in a breach of, constitute (with due notice or lapse of time or both) a default under, result in the creation or imposition of any lien, security interest, charge or encumbrance of any nature whatsoever upon any of the Assets.

(r)     Other than explicitly set forth herein or as required by Ameriprise, Seller is not required to obtain any consent, approval, or authorization from, or to file any declaration or statement with, any governmental instrumentality or other agency in connection with or as a condition to execution, delivery or performance of the Agreement.

(s)     There is no fact or information presently known to Seller, which has not been disclosed to Buyer and which materially affects, or will materially affect, the Assets or Seller's ability to make the transfer contemplated herein.

Notwithstanding the foregoing, Seller's Business and Assets, except as expressly "warranted or represented herein," are being purchased "As Is." Seller and Buyer agree that Seller's warranties include only such express written warranties as are contained in this Agreement. Any other express warranties, oral or written, not contained in this Agreement, are of no force and effect. Seller hereby disclaims all implied warranties.

5.     **Representations and Warranties of Buyer**. Buyer hereby represents, warrants, and covenants to Seller, as of this Agreement Date and upon the Closing Date, that:

(a)     Buyer is an individual resident of the State of Illinois.

(b)     Buyer has all requisite power and authority necessary to execute, deliver, and perform its obligations under this Agreement and all documents and agreements necessary to effectuate this transaction. Buyer has duly authorized, executed, and delivered this Agreement. This Agreement and all other documents and instruments required to be signed by Buyer under this Agreement constitute the Buyer's legal, valid, and binding obligations, enforceable against Buyer in accordance with their respective terms.

(c)     Buyer represents and warrants that the assets being sold and transferred pursuant to this Agreement relate to an existing Ameriprise franchise that belongs to an existing franchisee. Ameriprise is not selling the assets and will not receive proceeds from the sale.

(d)     Buyer is not involved in any undisclosed actions, proceedings, or investigations, which might adversely affect, limit, or impair Buyer's obligations hereunder. Buyer's execution and delivery of this Agreement, and the consummation of the transactions it contemplates, will not (i) violate, breach, or be a default under any contract, agreement, or commitment to which

8

2569006

Buyer is a party, or (ii) violate any order, injunction, judgment, license, permit, rule, regulation, or ordinance of any court, administrative agency, or governmental body.

(e)  Buyer has formed his own opinion as to the value of Seller's Assets being purchased hereunder.  The Parties acknowledge Buyer has inspected the Assets to the full extent of Buyer's desire, and the Seller has given Buyer ample opportunity to conduct such inspections.

(f)  Buyer meets the requirements of the Ameriprise Franchise Agreement.

6.  **Survival of Representations and Warranties**.  All representations or warranties herein shall survive the Closing for the period that the Promissory Note balance remains unpaid.

7.  **Independent Contractor**.  Buyer hereby acknowledges that Seller is a party to a broker dealer agreement with Ameriprise.  Buyer, as an Ameriprise franchisee, acknowledges that he has familiarized himself with the terms and conditions of the broker dealer agreement and, regardless of its provisions, assumes all risks inherent in the acquisition of Assets from Seller. Buyer further agrees to carry out all terms and conditions of this Agreement regardless of any actions or proceedings, adverse or otherwise, taken by Ameriprise at any time subsequent to the date hereof, and during the term of payments, if any, contemplated by this Agreement.

8.  **Post-Closing Obligations**.

(a)  Seller's Ongoing Conduct of Business.  Seller has agreed and will continue to conduct the Business in her normal course until, as applicable, either the Closing or the termination of this Agreement.  Seller and Buyer shall begin the transition of the Clients immediately following the Closing.  Buyer shall engage Seller to introduce Clients to Buyer. Seller shall be reasonably available to Buyer and shall use commercially reasonable efforts to promptly provide Buyer with appropriate introductions with respect to the transitioning and servicing of all Clients.

(b)  Non-Competiton Agreement and Consulting Agreement.  Buyer and Seller shall enter into a separate Non-Compete Agreement and Consulting Agreement, the form of which agreements are set forth in **Exhibit C** and **Exhibit D**, respectively.  Seller will receive as part of the Closing Payment the amount of consideration allocated to the Non-Compete Agreement and Consulting Agreement.

(c)  Within sixty (60) days after the Closing Date, Buyer will, at Buyer's expense, mail and/or email notices (in form acceptable to Buyer) to each then-current Client of the Business informing them that, effective as of the Closing Date, Buyer shall be the representative for such Client's account. To the extent reasonably requested by Buyer, Seller shall assist Buyer in Buyer's efforts to mail and/or email such notices.

9.  **Indemnification**.

(a)  Without limiting any other provision of this Agreement, Seller shall indemnify and hold Buyer harmless from any such debts, liabilities, losses, or claims damages, and reasonable attorney fees and expenses asserted against Buyer (collectively, "**Damages**"), arising out of or attributable to: (i) any breach of this Agreement or any document delivered by Seller

9

2569006

pursuant to this Agreement; (ii) any of the Excluded Liabilities and (iii) Any federal, state or local income, excise taxes, penalties, or interest when due to the appropriate governmental agencies which the Buyer is asked to pay by the governmental agency on behalf of the Seller or transferred to the Buyer because of this transaction (collectively, **"Indemnified Damages"**). Without limiting any other right or remedy of Buyer, Buyer shall have the right, exercisable by written notice to Seller, to set off any and all amounts of Indemnified Damages against any and all amounts owed to Seller under this Agreement from time to time; provided, however, that Seller shall have thirty (30) days from the date of notice to challenge or cure any such claim or liability asserted by Buyer before any set off may be exercised.

(b)     The Buyer shall indemnify and hold Seller harmless from any Damages asserted against Seller arising out of or attributable to: (i) any breach by Buyer of any provision of this Agreement or any document delivered by Buyer pursuant to this Agreement; and/or (ii) any claims, lawsuits, demands, investigations, or other liabilities of any kind, actual or alleged, other than the Excluded Liabilities, based on Seller's conduct that occurred after Closing that was related in any manner to Buyer's business operations.

10.     **Notices**. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered by certified mail, return receipt requested, or overnight express mail, postage and charges prepaid, addressed to the party to whom it is directed, at his or its address set forth below:

To Buyer:          931 N. Plum Grove Road Schaumburg, Illinois 60173

With a copy to:    Kotz Sangster Wysocki, P.C.
                   c/o Jeffrey Sternberg
                   jsternberg@kotzsangster.com

To Seller:

11.     **Termination**. Notwithstanding anything in this Agreement to the contrary, this Agreement may be terminated and the transactions contemplated hereby abandoned on or prior to Closing: (a) by mutual written consent of the Parties; (b) by Buyer if any of the conditions set forth in Sections 1(d) have not been met on or before the Closing Date, or if Seller has breached its representations and warranties set forth in Section 4 herein; (c) by Seller if any of the conditions set forth in Sections 1(d) have not been met on or before the Closing Date, or if Buyer has breached its representations and warranties set forth in Section 5 herein; (d) by either Party if the Closing has not taken place on or before June 8, 2020, or by such later date as the Parties mutually agree in writing; or (e) immediately, and without necessity of further action by any Party, in the event Buyer dies prior to Closing.

In the event of termination as provided above, each Party shall pay its own expenses incident to preparation for consummation of this Agreement and the transactions contemplated hereunder, and neither Party shall have any liability to the other hereunder except such liability as may arise as a result of a breach hereof.

12.     **Additional Terms**.

10

2569006

(a) **Modification: Waiver.** This Agreement contains the entire agreement between the Parties hereto with respect to the transaction contemplated herein and (except for the amendment at or immediately prior to Closing of **Exhibit A**) shall not be modified or amended except by an instrument in writing signed by each of the Parties. Any modification or waiver of any provisions of this Agreement, or consent to any departure therefrom, shall be effective only in the specific instance, and for the purpose, for which given. Neither any failure nor any delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall single or partial exercise thereof preclude any other or future exercise, or the exercise of any other right, power or privilege.

(b) **Binding Effect/Successors.** Except as set forth in Section 11, this Agreement shall be binding upon and inure to the benefit of the respective Parties hereto and their heirs, personal representatives, successors, and permitted assigns.

(c) **Severability.** Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

(d) **Choice of Law.** This Agreement is being executed and delivered in the State of Illinois and shall be governed by and construed and enforced in accordance with the laws of the State of Illinois.

(e) **Exhibits and Recitals.** This Agreement, which includes without limitation all recitals set forth herein and all exhibits attached hereto, constitutes the entire agreement and the full and final expression of the Parties with regard to the specific subject matter hereof and supersedes any and all prior understandings and agreements among the Parties with regard to the specific subject matter hereof.

(f) **Headings.** Section and paragraph headings in this Agreement are included for convenience or reference only and shall not constitute part of this Agreement for any other purpose.

(g) **No Assignment Allowed.** Neither Buyer nor Seller shall assign this Agreement or any part thereof without the prior written consent of both Parties. Any purported assignment without such written consent is void and unenforceable.

(h) **Joint Preparation of Agreement.** Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the same shall not be construed against any party on the basis that the Party was the drafter.

(i) **Execution and Acknowledgment.** By signing this Agreement, Buyer and Seller acknowledge they have had their attorney review this Agreement or have chosen not to do so. By signing, Buyer and Seller acknowledge that they have read, or had read to them, and fully understand this Agreement and confirm that the document correctly states the terms and conditions as understood by the Parties.

11

2569006

**(j)** **Dispute Resolution.** Any legal action or proceeding with respect to this Agreement shall be brought and maintained in any federal or state court located in Cook County, Illinois. If any action is brought by any Party against any other Party arising from or relating to this Agreement, the prevailing Party shall recover from the other Party reasonable attorneys' fees, costs and expenses incurred in connection with the prosecution or defense of such action, including all appeals. EACH PARTY HERETO WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING FROM OR RELATING TO THIS AGREEMENT.

**(k)** **Counterparts.** The Parties may execute this Agreement in any number of counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. Facsimile and emailed signatures shall be sufficient for all purposes.

**(l)** **Survival of Rights**. Except as provided in Section 6, the Parties' respective rights and obligations under this Agreement shall survive the Closing.

**(m)** **Revenues**. Seller acknowledges and agrees that, except as otherwise expressly provided in this Agreement, Buyer is entitled to all commissions, trail commissions, fees and any and all other revenue received on or after the Closing Date from Client accounts.

*[ Remainder of page intentionally blank. Signature page follows. ]*

12

2569006

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the dates of their signatures below, to become effective as of the Agreement Date above.

Seller: _____

SHAWN PARKER

Date: 5/26/2020

Buyer: _____

JUSTIN A. PARKER

Date: 5-26-2020

Witnessed By: _____

Date: 5/26/2020

Witnessed By: _____

Date: 5/26/2020

JEAN HODAL
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
November 07, 2021

C:\1381055.3