IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAWN PARKER, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 22-cv-00615 ) ) Judge Andrea R. Wood ) |
| JUSTIN PARKER, | ) ) ) |
|     Defendant. | ) |

**ORDER**

Defendant's partial motion to dismiss Counts III and IV of the Complaint [12] is granted. Counts III and IV are dismissed without prejudice. Defendant shall answer Counts I and II of the Complaint by 4/10/2023. See the accompanying Statement for details.

**STATEMENT**

This case concerns a dispute between a mother and son regarding an agreement for the sale of a financial services advisory business. Specifically, Plaintiff Shawn Parker ("Shawn") alleges that her son, Defendant Justin Parker ("Justin"), breached his payment obligations under the agreements governing the sale. Now before the Court is Justin's partial motion to dismiss Counts III and IV of the Complaint for lack of subject-matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. (Dkt. No. 12.) For the reasons that follow, the motion is granted.

**I.**

For purposes of its analyses under both Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded facts in the Complaint as true and views those facts in the light most favorable to the nonmoving party. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (providing standard for Rule 12(b)(6) motion to dismiss for failure to state a claim); *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017) (providing standard for Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction). The Complaint alleges as follows.

Shawn developed and operated a financial services advisory business ("Business"), where she managed over $500 million in assets. (Compl. ¶¶ 14–15, Dkt. No. 1.) From 1999 until the sale of the Business in 2020, Shawn ran the Business as an independent franchisee of Ameriprise Financial, Inc. ("Ameriprise"), a financial services company. (*Id.* ¶¶ 19–20, 35.) In essence, Ameriprise maintained custody of the accounts for Shawn's clients while Shawn acted as the

broker for the accounts and received income from Ameriprise based upon her sales of financial services and products. (*Id.* ¶¶ 22–24.)

In 2002, Shawn hired her son, Justin, for a supporting role in the Business. (*Id.* ¶ 17.) In 2015, she began to consider retiring within five years. (*Id.* ¶ 25.) Although Shawn declined Justin's request to gift him the Business, she eventually agreed to sell it to Justin at a discounted price in 2019. (*Id.* ¶¶ 26–29.) Meanwhile, the Financial Industry Regulatory Authority ("FINRA") started investigating the Business in late 2019 regarding a non-client-related compliance issue. (*Id.* ¶¶ 31–32.) Even though Shawn contested the basis of the FINRA investigation, she consented to terminating her relationship with Ameriprise on February 15, 2020, with the termination to take effect after she sold the Business to Justin. (*Id.* ¶ 33.) At the time Justin's attorneys began drafting the contractual agreements, Justin knew about the pending FINRA investigation and Shawn's termination agreement with Ameriprise; specifically, the parties exchanged the FINRA complaint and Shawn's termination letter during the disclosure process of the sale. (*Id.* ¶¶ 34, 39.) However, Justin's counsel failed to provide a finalized closing book incorporating the exchanged materials. (*Id.* ¶ 39.)

On June 8, 2020, Shawn and Justin entered into the Practice Purchase Agreement ("Purchase Agreement"), under which Shawn agreed to sell the assets and goodwill of the Business to Justin for $16 million. (*Id.* ¶¶ 35–36.) As a result of the FINRA investigation, the Purchase Agreement also included an attrition clause providing that the total purchase price of the Business could be adjusted after two years, dependent on the retention or departure of certain clients. (*Id.* ¶ 37.)

The parties also contemporaneously executed other collateral agreements, including a $16 million Promissory Note ("Note"), Consulting Agreement, and Non-Competition Agreement. (*Id.* ¶¶ 38, 40.) Justin financed his payment of the Business through the Note, which provides for Justin to repay the $16 million purchase price in equal monthly installments commencing on January 1, 2020 and continuing monthly for ten years. (*Id.* ¶¶ 40–41.) The Note further provides that Justin will be in default if he misses a monthly payment and fails to cure it within ten business days of receiving written notice; thereafter, the Note's acceleration clause applies and all outstanding principal balance and accrued interest will accelerate and become due—at an eight percent per annum default interest rate until paid. (*Id.* ¶¶ 42–43.) With respect to the Consulting Agreement, Shawn agreed to provide free consulting services to the Business to assist Justin in maintaining client relationships and preserving the Business's value. (*Id.* ¶¶ 45–46.) Under the Non-Competition Agreement, Shawn further agreed, *inter alia*, neither to provide financial services or assist any person or entity in providing financial services for five years in Illinois, nor to be associated with any person or entity providing financial services to any of the specified client accounts for five years in the United States. (*Id.* ¶¶ 47–48.)

Despite Shawn complying with all her obligations under the various agreements, Justin failed to make the first required payment on January 1, 2021. (*Id.* ¶¶ 49, 53.) Even after Shawn sent Justin a notice of default on January 8, 2021, he did not cure the default within ten days. (*Id.* ¶ 55.) To date, Justin still has not made any of the Note's required payments, resulting in Justin earning approximately $410,000 in monthly net profits without any payment to Shawn. (*Id.* ¶¶ 55–56.) Additionally, since the spring of 2021, Justin has prevented Shawn from performing

her obligations under the Consulting Agreement by restricting her ability to participate in client calls and serving her with cease-and-desist letters, which demand that she cease contact with her former clients. (*Id.* ¶¶ 57–59.)

Consequently, Shawn brought this lawsuit against Justin in February 2022. She asserts the following claims: breach of contract, based upon Justin's failure to make payments as required by the Note (Count I); declaratory judgment, seeking a declaration that because of Justin's default under the Note, the entire debt accelerated and the Purchase Agreement's attrition clause is now moot and unenforceable (Count II); declaratory judgment, in the alternative to Count I, seeking a declaration that due to Justin's failure to pay the purchase price of the Business, Shawn is no longer bound by the Non-Competition Agreement, is free to compete with Justin and solicit the Business's client accounts, and is allowed to move any of the client accounts to a new broker (Count III); and unjust enrichment, in the alternative to Count I (Count IV). (*Id.* ¶¶ 61–96.)

## II.

Justin argues that Count III—the declaratory judgment claim regarding the Non-Competition Agreement—must be dismissed under Rule 12(b)(1) because it is not ripe for adjudication. Specifically, he contends that Shawn has not alleged any facts indicating that there is an actual dispute over the Non-Competition Agreement, such as alleging that she plans to compete with Justin, she is presently competing with Justin, the parties presently disagree about the contract's terms, or Justin's conduct has given Shawn apprehension of liability under the contract.[1]

Article III of the Constitution restricts the authority of federal courts to "cases or controversies." *Rock Energy Co-op. v. Vill. of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010). The Declaratory Judgment Act authorizes a court to "declare the rights and other legal relations of any interested party seeking such declaration" in the case of an actual controversy within the court's jurisdiction. *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) (quoting 28 U.S.C. § 2201(a)). The Declaratory Judgment Act's actual controversy requirement is coextensive with Article III's case-or-controversy requirement. *Amling*, 943 F.3d at 377.

Ripeness is one dimension of the case-or-controversy requirement. *Id.* It implicates a district court's subject-matter jurisdiction. *Harer v. Casey*, 962 F.3d 299, 306 (7th Cir. 2020). A declaratory judgment action is ripe when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

---

[1] To support his ripeness argument, Justin asserts that public records show that Shawn lacks the requisite license to compete with Justin. He asks the Court to take judicial notice of FINRA records that he argues indicate that Shawn is barred by FINRA from acting as a broker or associating with a broker-dealer firm, and that she consented to that sanction and the entry of findings that she converted $25,000 from her firm. (Def.'s Mot. to Suppl. At 2, Dkt. No. 15.) In response, Shawn contends that the FINRA records are irrelevant because the scope of the FINRA sanction is narrower than the scope of activities proscribed by the Non-Competition Agreement, which includes non-FINRA financial activities. While courts may take judicial notice of matters of public record when ruling on a motion to dismiss, *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022), the Court finds it unnecessary to do so here, as it can resolve the ripeness issue based solely on Shawn's allegations in the Complaint.

3

immediacy and reality to warrant the issuance of a declaratory judgment." *Amling*, 943 F.3d at 377 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). To be ripe for adjudication, a case must not be "dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 545 (2020) (internal quotation marks and citation omitted). The ripeness doctrine "bar[s] a plaintiff from asserting an injury that depends on so many future events that a judicial opinion would be advice about remote contingencies." *Rock Energy*, 614 F.3d at 748 (citation omitted).

Here, the Court finds that Count III is unripe. In the event Shawn is unable to recover monetary damages for breach of the Note under Count I, Count III primarily seeks a declaration that the Non-Competition Agreement is unenforceable against Shawn. (Compl. ¶ 80.) Shawn argues that a reasonable inference from her allegations that she planned to retire after selling the Business to Justin (*see id.* ¶¶ 25–30) is that she would use the $16 million to fund her retirement; thus, she will need to work in the financial services sector again to replace those expected funds if not granted relief, but the Non-Competition Agreement would prohibit her from doing so. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("PROMD") at 5–6, Dkt. No. 16.) Shawn further contends that if she competes with Justin, she will face the imminent threat of Justin suing her for breach.

But while Shawn may plead claims in the alternative, *see* Fed. R. Civ. P. 8(a)(3), Count III is not of sufficient immediacy and is based on too many future events. For instance, Shawn fails to allege that she is competing with Justin, has taken steps to compete with Justin, or presently intends to compete with Justin—instead, she alleges only that she will have to compete if she is not awarded monetary damages for Justin's purported breach. Nor does Shawn allege that Justin has threatened enforcement of the Non-Competition Agreement. Without such allegations, there is no actual controversy for the Court to adjudicate.

This conclusion is consistent with rulings from other courts finding declaratory judgment actions to be unripe where the plaintiff sought a declaration that a non-competition agreement was unenforceable but did not allege that they planned to compete with the defendant or that the defendant threatened to enforce the agreement. *See, e.g.*, *Accelecare Wound Ctrs., Inc. v. Bank of New York,* No. 08 CIV.8351, 2009 WL 2460987, at *7 (S.D.N.Y. Aug. 11, 2009) ("This claim is not yet ripe. Bullard and Hedrick have announced no plans to even attempt to compete with Accelecare, nor does their pleading indicate that Accelecare plans to enforce the covenant against them.); *Lyman v. St. Jude Med. S.C., Inc.*, 423 F. Supp. 2d 902, 906 (E.D. Wis. 2006) (noting that the plaintiffs failed to allege that the defendant threatened suit, that the defendant claimed that they had breached the non-compete provision, or that they were taking steps to compete with defendant); *Cohen v. Orthalliance New Image, Inc.*, 252 F. Supp. 2d 761, 768 (N.D. Ind. 2003) ("Nothing in the record could lead to the conclusion that Cohen is competing with New Image (and therefore fearful of a lawsuit to enjoin the competition). Similarly, the record contains no facts suggesting competition is imminent."). Shawn's declaratory judgment claim is likewise deficient.

Count III is thus dismissed. Because the dismissal speaks to the Court's subject-matter jurisdiction (or lack thereof), it is without prejudice. *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (explaining that a dismissal for lack of subject-matter jurisdiction cannot

also be dismissed "with prejudice" because "that's a disposition on the merits, which only a court with jurisdiction may render").

### III.

Turning to Count IV, Shawn asserts that Justin has been unjustly enriched by his possession of the Business and the income earned from it, which otherwise would have gone to her or been factored into a third-party purchaser's offer for the Business. Justin argues that Count IV must be dismissed because unjust enrichment claims are not viable when there is a valid contract governing the same subject matter.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although the Court accepts the plaintiff's well-pleaded factual allegations as true, conclusory allegations will not be sufficient to avoid dismissal. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

"To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022) (citing *Hatcher v. Hatcher*, 158 N.E.3d 326, 330 (Ill. App. Ct. 2020)). Unjust enrichment is not a viable claim when a contract governs the parties' relationship. *See id.* This rule is premised on the idea that unjust enrichment provides an equitable remedy arising from a contract implied in law; however, an implied contract cannot exist where an express contract governs the parties' relationship. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). Further, an equitable remedy is not available when a legal remedy exists. *Id*. Put differently, parties cannot use quasi-contractual theories to "shift risk[s] that they knowingly assumed" under a contract. *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).

That said, a plaintiff may plead unjust enrichment as an alternative theory to a breach of contract claim in certain limited circumstances, such as: "(1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is not an express contract, then the defendant is liable for unjustly enriching himself at [the plaintiff's] expense." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021) (citation and internal quotation marks omitted). But plaintiffs may not "include allegations of an express contract which governs the relationship of the parties" in their unjust enrichment claims. *Id.* (quoting *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005)). While an unjust enrichment claim will rarely survive a motion to dismiss where the contract's existence is undisputed, it may survive if the contract's validity or scope is uncertain, or if the plaintiff's claim "falls outside the contract." *Gociman*, 41 F.4th at 887 (citations omitted). "In determining whether a claim falls outside a contract, the

5

subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688 (7th Cir. 2004) (citations omitted).

Here, Shawn's unjust enrichment claim fails because the Purchase Agreement and Note—express contracts—govern the parties' relationship. Although Shawn pleaded unjust enrichment as an alternative to her breach of contract claim, she does not contest the validity or scope of the contract nor does she allege that her unjust enrichment claim is valid only if the Court finds the contract to be invalid. *Cf. Traffic Tech, Inc. v. Kreiter*, No. 14-CV-7528, 2015 WL 9259544, at *15 (N.D. Ill. Dec. 18, 2015) (concluding that the plaintiff adequately pleaded unjust enrichment in the alternative, where he alleged that the claim only became relevant upon the court's determination that certain provisions of the contract were unenforceable). Instead, Shawn re-alleges and incorporates into Count IV her allegations from paragraphs 1 through 60, where she pleads that the parties executed the Purchase Agreement in June 2020, she sold the Business to Justin for $16 million, Justin financed his purchase of the Business through the Note, and Justin failed to make the Note's required payments or cure his default. (Compl. ¶¶ 35–36, 40, 53–56, 88.) Throughout Count IV, Shawn also implicitly and expressly refers to the Note and Purchase Agreement. For example, Shawn alleges that Justin has earned over $9 million from the Business since the date of the Purchase Agreement, Justin received that income due to Shawn signing the Business over to him, and Justin has retained the benefits of that transaction without paying the $16 million purchase price. (*Id.* ¶¶ 92–94.) Despite Shawn's protestations to the contrary, that she did not expressly state that the Note and Purchase Agreement are valid contracts in Count IV is inconsequential.

In her response brief, Shawn contends that the unjust enrichment claim falls outside the Note and Purchase Agreement because the claim is not about those contracts; rather, it concerns how Justin wrongly received and retained over $9 million in income from the Business to her detriment. But the subject matter of the contract governs when determining whether a claim falls outside the contract. *Util. Audit, Inc.*, 383 F.3d at 688. In this case, the subject matters of the Purchase Agreement and Note are the sale of the Business from Shawn to Justin and the financing of that sale, respectively. Shawn's unjust enrichment claim clearly addresses Justin's acquisition of the Business, which he acquired from Shawn, and his failure to pay the purchase price of the Business—the same subject matter as the Note and Purchase Agreement.

Therefore, Count IV must also be dismissed. Generally, a plaintiff is entitled to at least one chance to amend their complaint to cure a pleading error, unless amendment clearly would be future or otherwise unwarranted. *Gociman*, 41 F.4th at 887. As the Court cannot say definitively that amendment would be futile, Count IV is dismissed without prejudice to Shawn seeking leave to file an amended complaint that remedies the deficiencies in that count discussed herein.

ENTERED:

Dated: March 20, 2023

Andrea R. Wood
United States District Judge

6