UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAWN PARKER,<br>      Plaintiff<br><br>  v.<br><br>JUSTIN PARKER,<br>      Defendant | No. 22 CV 615<br><br>Judge Jeremy C. Daniel |
| JUSTIN PARKER,<br>      Counter-Plaintiff<br><br>  v.<br><br>SHAWN PARKER,<br>      Counter-Defendant | |

**ORDER**

For the reasons stated on the record during the October 18, 2023 motion hearing, as well as those stated in this order, Plaintiff Shawn Parker's motion to strike Defendant Justin Parker's affirmative defenses, R. 43, is granted in part and denied in part, the plaintiff's motion to dismiss the defendant's counterclaims, R. 44, is granted in part and denied in part, and the plaintiff's motion for judgment on the pleadings, R. 45, is denied in its entirety. The plaintiff will have 21 days to answer the defendant's counterclaims.

**STATEMENT**

Plaintiff Shawn Parker, a former financial advisor and independent franchisee of Ameriprise Financial Inc. ("Ameriprise"), is suing her son, Justin Parker, for breach of contract after the defendant defaulted on a promissory note that he executed to purchase the plaintiff's Ameriprise franchise. The parties memorialized their agreement by executing four contracts effective June 8, 2020: a practice purchase agreement, a promissory note, a consulting agreement, and a noncompete agreement (together, the "Agreement").

The defendant answered the complaint and asserted various counterclaims and affirmative defenses. R. 39. The plaintiff moved to strike certain of the defendant's answers and affirmative defenses and to dismiss his counterclaims. R. 43, 44. At a motion hearing held on October 18, 2023, the Court denied the motions with respect to all counterclaims and affirmative defenses except (1) the defendant's affirmative defense and counterclaim of invalidity under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (the "Exchange Act") and (2) the defendant's affirmative defense of failure of consideration. After hearing the parties' arguments as to these defenses and counterclaim and taking them under advisement, the Court now considers their merits.

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a counterclaim need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all well-pleaded factual allegations in the counterclaim and draw all reasonable inferences in the plaintiff's favor. *See NewSpin Sports, LLC v. Arrow Elecs.*, Inc., 910 F.3d 293, 299 (7th Cir. 2019). The counterclaim must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Affirmative defenses are stricken "only when they are insufficient on the face of the pleadings." *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)) ("Ordinarily, defenses will not be struck if they are sufficient as a matter of law or if they present questions of law or fact."). An affirmative defense will survive a motion to strike under Rule 12(f) if: (1) it is properly pleaded as an affirmative defense; (2) it is adequately pleaded under Rules 8 and 9; and (3) it can withstand a Rule 12(b)(6) challenge. *Hughes v. Napleton's Holdings, LLC*, No. 15 C 50137, 2016 WL 6624224, at *2 (N.D. Ill. Nov. 9, 2016); *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, No. 20-CV-7404, 2021 WL 5833986, at *2 (N.D. Ill. Dec. 9, 2021).

Finally, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pleadings "include the complaint, the answer, and any written instruments attached as exhibits." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). In assessing the motion, a reviewing court is "confined to the matters presented in the pleadings" and "must consider those pleadings in the light most favorable to" the nonmoving plaintiff. *Id.*

The Court begins with the defendant's argument that the Agreement violates the Exchange Act. Section 78cc(b) of the Exchange Act provides that any contract made in violation of any provision of the Exchange Act, or any rule or regulation thereunder, shall be void. 15 U.S.C. § 78cc(b). One such rule, FINRA Rule 20240(a) provides that:

> No member or associated person shall, directly or indirectly, pay any compensation, fees, concessions, discounts, commissions or other allowances to . . . any person that is not registered as a broker-dealer under Section 15(a) of the Exchange Act but, by reason of receipt of any such payments and the activities related thereto, is required to be so registered under applicable federal securities laws and [Exchange Act] rules and regulations.

FINRA Rule 2040(a)-(a)(1). An individual is required to register as a broker-dealer under the Exchange Act if they are engaged in the business of buying and selling securities. *See* 15 U.S.C.A. §§ 78c(a)(4)(A) (defining "broker" as "any person engaged in the business of effecting transactions in securities for the account of others"), 78c(a)(5)(A) (defining "dealer" as "any person engaged in the business of buying and selling securities for his own account, through a broker or otherwise.").

The defendant alleges that the Agreement is invalid because it requires him, as an "associated person" within the meaning of the Exchange Act, to compensate the plaintiff for broker-dealer services despite the fact she has been barred from providing these services. Construed as the defendant suggests, the Agreement violates FINRA Rule 2040 and is therefore invalid under § 78cc(b).

The defendant's argument raises a question of contract interpretation. Under Illinois law, when construing a contract, the primary objective is to give effect to the intention of the parties. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) (citation omitted). The Court "must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* (citation omitted). Where the language of a contract is clear, a party cannot point to contrary allegations in their pleading to overcome a motion to dismiss challenge. *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017). A contract must be construed as a whole, viewing each provision in light of the other provisions. *Gallagher*, 874 N.E.2d at 58 (citation omitted). "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) (citation omitted). However, if the language of the contract is susceptible to more than one meaning, it is ambiguous, and a court can consider extrinsic evidence to determine the parties' intent. *Gallagher*, 874 N.E.2d at 58 (citation omitted). Finally, "instruments executed at the same time, by the same parties, for the same

3

purpose, and in the course of the same transaction are regarded as one contract and will be construed together." *Id.*

Applying these principles, the Court finds that the Agreement does not violate the Exchange Act. In particular, the Agreement does not require the plaintiff to act as a broker-dealer since the plain language does not obligate her to buy or sell securities or facilitate their sale. Paragraph 8 of the practice purchase agreement defines the plaintiff's post-closing obligations as (1) "engag[ing] Seller to introduce Clients to Buyer," (2) "be[ing] reasonably available to Buyer," and (3) "us[ing] commercially reasonable efforts to promptly provide Buyer with appropriate introductions with respect to the transitioning and servicing of all Clients." R. 39-1 at 10. These obligations do not require the plaintiff to purchase securities, facilitate their purchase, or receive compensation, fees, concessions, discounts, commissions or allowances on this basis. Similarly, the consulting agreement limits the plaintiff's post-closing responsibilities to "assisting with the transfer of clients and their accounts to the Financial Practice *as allowed under Ameriprise, Illinois, and Federal Securities laws*." R. 39-3 § 1(a) (emphasis added). Because the Agreement expressly provides that the plaintiff's post-closing consulting services must be consistent with federal securities law, it follows that any violation of the Exchange Act or FINRA's rules would fall outside the scope of the Agreement. The Court also notes that both the practice purchase agreement and the consulting agreement contain severability provisions, indicating that if any portion of the contract is determined to be illegal or unenforceable, the court may sever it from the rest of the contract. R. 39-1 at 12; R. 39-3 at 5-6. Accordingly, even if a portion of the agreement was inconsistent with the Exchange Act or FINRA's rules, this would not invalidate the entire agreement.

The defendant points to recital C of the practice purchase agreement, which defines the goodwill to be transferred as "relationships between Seller and the current clients of the Business . . . and the expected continued patronage of such Clients, due to Seller's own name and reputation and ability to influence such relationships with such Clients." R. 39-1 at 2. This recital does not reference the buying and selling of securities, however, and the ordinary meaning of the language in the recital does not plainly refer to activities that would require the plaintiff to register as a broker-dealer under the Exchange Act. The defendant points to no authority suggesting that transferring the intangible assets of a financial advisory business to a new owner following the previous owner's misconduct violates the Exchange Act. Indeed, if such an agreement were categorically illegal, it is unclear why Ameriprise would authorize it, as the defendant alleges in his counterclaim. R. 39 at 44 ¶ 34.

The defendant also argues that the contract contains a "latent ambiguity" as to whether it required the plaintiff to provide broker services. R. 47 at 18. The Court does not see how the contract language is ambiguous; the defendant does not point to any specific provision of the agreement that is "susceptible to more than one reasonable construction." *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 153

4

(1st Dist. 2000). Regardless, under well-settled principles of contract interpretation, "an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) Contracts § 203(a) (1981); *see also Palmer v. Beverly Enters.*, 823 F.2d 1105, 1107 (7th Cir. 1987) (Illinois courts follow the Second Restatement in contract cases). Because the defendant's alleged interpretation would render the contract illegal and void, the Court must construe any ambiguity in favor of validity. In sum, the defendant fails to plausibly allege that the agreements executed for the sale of the business are void under the Exchange Act. The Court grants the plaintiff's motion to dismiss Count I of the defendant's counterclaims and to strike the defendant's first affirmative defense.

The Court next addresses the plaintiff's motion to strike the defendant's affirmative defense of failure of consideration. The defendant alleges that there was no consideration for the promissory note because the plaintiff failed to transfer the advisory business's goodwill. Under Illinois law, "[c]onsideration must be analyzed as of the time of entering the contract." *Ogdon v. Hoyt*, 409 F. Supp. 2d 982, 988 (N.D. Ill. 2006) (citing *Russell v. Jim Russell Supply, Inc.*, 558 N.E.2d 115 (Ill. App. Ct. 1990)). "Failure of consideration is an "extraordinary remedy" that precludes the formation of a contract. *MAN Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 582 (N.D. Ill. 1999) (citation omitted). "Where the consideration in a contract is a party's promise to perform in the future, the consideration does not fail because of non-performance, since the promise, and not the performance, is the real consideration." *PSB Partners, LLC v. F. Kenneth Bailey, Jr., P.C.*, No. 17 C 4180, 2019 WL 11553734, at *9 (N.D. Ill. Mar. 7, 2019) (citing *Wilson v. Cont'l Body Corp.*, 418 N.E.2d 56, 59 (1st Dist. 1981)).

Here, the consideration for the defendant's payment on the promissory note was the plaintiff's promise to transfer the goodwill of the advisory business. This promise is sufficient consideration for the promissory note. *Compare PSB Partners*, 2019 WL 11553734, at *9 (striking failure of consideration affirmative defense where plaintiff alleged that defendant executed promissory note but failed to repay), *with Worner Agency, Inc. v. Doyle*, 459 N.E.2d 633, 636 (Ill. App. Ct. 1984) (finding that plaintiff's complaint was "defective" as to consideration because plaintiffs "ma[de] no serious argument that it states facts supporting consideration"). At the hearing, the defendant argued that, at the time of signing, the plaintiff was aware that she would not be able to transfer the advisory business's goodwill, thus rendering her promise illusory. R. 39 at 57 ¶ 88, 60 at ¶ 99. While true that "[a]n illusory promise is not sufficient consideration to support a contract," *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1206 (7th Cir. 1998), that's not what the defendant pled. As pled, the defense is entirely backwards looking. It starts by assuming a valid

5

contract, which necessarily implies adequate consideration, and then identifies things the plaintiff did or did not do after entering the contract. *See* R. 39 at 34-5. Those things all relate to steps the plaintiff had to take to fulfill her promise to transfer the business's goodwill, which underscore that, at the time of the agreement, the consideration was the promise to transfer the business's goodwill. To the extent that circumstances may have diminished the value of that goodwill, and to the extent that the plaintiff did not follow through on that promise, those issues fall within other defenses raised by the defendant. Consequently, these allegations as they relate to a failure of consideration cannot withstand a Rule 12(f) challenge. *Hughes*, 2016 WL 6624224, at *2. Accordingly, the Court grants the plaintiff's motion to strike this affirmative defense.

Finally, the Court briefly addresses the plaintiff's motion for judgment on the pleadings. Rule 12(c) provides that a party may only move for judgment on the pleadings "[a]fter the pleadings are closed." "Unless the court orders a reply to an answer or third-party answer, the pleadings close after the last of the following pleadings in the case has been filed: answer, reply to a counterclaim, answer to a crossclaim, and third-party answer." *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 916 (N.D. Ill. 2012) (quoting 2–12 Moore's Federal Practice—Civil § 12.38). A 12(c). A motion for judgment on the pleadings is premature if it is filed after the filing of a counterclaim and before a reply to the counterclaim. *Arch Ins. Co. v. Stone Mountain Access Sys., Inc.*, No. 16 C 514, 2016 WL 3671466, at *3 (N.D. Ill. July 11, 2016) (citing *Flora v Home Fed. Sav. & Loan Assoc.*, 685 F.2d 209, 211 n. 4 (7th Cir. 1982)).

The plaintiff's motion for judgment on the pleadings is premature because she has not answered or responded to the defendant's counterclaim for breach of contract. Nor has she answered any of the defendant's other counterclaims. This alone is grounds for denial. *See Shield Techs.*, 908 F. Supp. 2d at 917. Moreover, "[w]hen a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (citation omitted). In other words, "the moving party must demonstrate that there are no material issues of fact to be resolved." *Id.* As stated on the record during the October 18, 2023 hearing, there are numerous disputed factual issues related to the validity of the Agreement that preclude judgment on the pleadings. The plaintiff's counsel insists that judgment on the pleadings is proper because the defendant admitted in his answer that he executed the promissory note. But admitting that an agreement was signed does not automatically render a contract enforceable, especially if there are plausible allegations that a counterparty's assent was procured through fraud. *See, e.g., Lewis v. School Dist. #70*, 648 F.3d 484, 487 (7th Cir. 2011) (stating that "an otherwise enforceable contract may be set aside where there is evidence of fraud in the

6

inducement of the contract"). Similarly, the provision in the promissory note purporting to waive defenses and claims cannot extinguish the defendant's counterclaims at the pleading stage given the defendant's allegations that this provision was obtained through fraud or mistake. The Court therefore denies the plaintiff's motion for judgment on the pleadings.

In sum, the Court (1) grants the plaintiff's motion to strike as to the defendant's affirmative defenses of validity under the exchange act and failure of consideration, (2) grants the plaintiff's motion to dismiss the defendant's counterclaim of validity under the Exchange Act, and (3) denies the plaintiff's motion for judgment on the pleadings in its entirety. For the reasons stated on the record, the motions are denied as to all other affirmative defenses and counterclaims.

Date: 10/23/2023

JEREMY C. DANIEL
United States District Judge